ELIZABETH BYRNES, as Administratrix, etc., Respondent, v. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

113   251
117   639
113   251
121   212
113   251
131   585
132   572
113   251
158   303

S., plaintiff's intestate, was in defendant's employ as a brakeman upon a freight train. A car loaded with lumber at a way station was to be attached to the train. It was being moved by the engine from the switch to the main track. S. got upon it to stop it, but in consequence of the improper manner in which the car was loaded the brake was rendered useless, a collision occurred and S. was thrown from the car and killed. In an action to recover damages, it appeared that the car and its appliances before it was loaded was in good condition. It was, by defendant's rules, made the duty of the station-master to either inspect the car himself or have some one do so before it was taken out. Had this been done the improper loading would have been discovered. *Held*, that defendant, having provided a safe car and a system and competent men for its inspection, for injuries resulting to a co-employe, for their neglect of this duty, it was not liable.

Also, *held*, the question was not affected by the fact that the car was loaded by the owner of the lumber.

Also, *held*, that the question was sufficiently raised by a motion for a nonsuit based on the ground that no negligence of the defendant had been shown.

(Argued March 18, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 13, 1888, which affirmed a judgment in favor of plaintiff, entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought by plaintiff, as the administratrix of Sylvester Byrnes, for the recovery of damages resulting from his death. Byrnes was a brakeman in the service of the defendant, and was engaged on a freight train which ran between Port Jervis and Deposit. On the 25th day of February, 1884, his train was going east and there was a car of lumber on a side track at Lordville to be taken into his train. When the train approached Lordville the engine was loosened from it while it was in motion and ran down with

greater speed than the disconnected train to the vicinity of the lumber car. That car stood upon a switch on the west side of the track and was connected with the main track at one end only, being what is known as a blind switch. The open end of the switch was at the west towards the coming train. To start the car and run it to and upon the track one end of a bar of wood called a stake was placed at the rear end of the engine after it passed the lumber car, and the other end against the front or east end of the lumber car, and then the engine was started back and thus propelled the car along the switch and upon the main track. This is called staking out a car. By the time this car was thrown upon the main track at the mouth of the blind switch, the train still in motion had approached within about fifty feet of the car. Byrnes was then on the top of the train and near the front end, and after setting the brake there he went down from the train and ran to the lumber car then coming towards him, ascended the car while it was still in motion and reached the wheel of the brake and made some move to turn the wheel. At that instant the lumber car and the train came together with violence and shot the lumber back and Byrnes was caught between it and the car behind and received injuries from which he died in a few days.

The further material facts are stated in the opinion.

*Lewis E. Carr* for appellant. To sustain a verdict there must be something more than a mere scintilla of evidence, or than the existence of a condition of things equally consistent with negligence and its absence. (*Baulec* v. *R. R. Co.*, 59 N. Y. 356, 366; *Hayes* v. *R. R. Co.*, 97 id. 259, 262; *Dwight* v. *Insurance Co.*, 103 id. 341, 358, 359.) The real or proximate cause of the injury is alone to be considered. Unless the evidence points out the negligence of the defendant as the proximate cause the action fails. There is need of something more than a state of facts consistent with either hypothesis. (*Hayes* v. *R. R. Co.*, 97 N. Y. 259, 262; *Hofnagle* v. *R. R. Co.*, 55 id. 608; *Searles* v. *M. R. Co.*, 101 id. 661; *Taylor*

v. *City of Yonkers,* 105 id. 202, 208, 209 ; *Kaveny* v. *City of Troy,* 108 id. 571, 577.)   Where two or more causes seem to have co-operated in producing an injury that is proximate without which it could not have occurred, and that remote which may or may not have produced it.   (*Ring* v. *City of Cohoes,* 77 N. Y. 83, 90 ; *Searles* v. *M. R. Co.,* 101 id. 661 ; *Taylor* v. *City of Yonkers,* 105 id. 202 ; *Harvey* v. *R. R. Co.,* 88 id. 481 ; *Williams* v. *R. R. Co.,* 39 Hun, 430, 434 ; *Sellick* v. *R. R. Co.,* 32 A. L. J. 448, 449 ; *Hall* v. *C., etc., R. R. Co.,* 49 Hun, 373, 375, 376 ; *Whittaker* v. *D. & H. C. Co.,* Id. 400, 403.)   The jury must not be left to conjecture, and a bare possibility that the damage was caused in consequence of the negligence and unskillfulness of the defendant is not enough.   (*Taylor* v. *City of Yonkers,* 105 N. Y. 202, 208 ; *Kaveny* v. *City of Troy,* 108 id. 571, 577 ; 101 id. 661.) If the servant, for his own accommodation, or in pursuance of his own method, sees fit to pursue a course which increases the danger, he may not say when the danger has overtaken him, he assumed the means provided by his employer would prove suitable for the emergency created by himself.   The risk from such an act he takes upon himself.   (*Haskin* v. *R. R. Co.,* 65 Barb. 129 ; *Murphy* v. *R. R. Co.,* 11 Daly, 125, 132 ; *Powers* v. *R. R. Co.,* 98 N. Y. 274, 280 ; *McGrath* v. *R. R. Co.,* 18 Am. and Eng. R. R. Cas. 5 ; 3 Wood's Railway Law, 1490 ; *Durgin* v. *Munson,* 9 Allen, 396 ; 85 Am. Dec. 770.)   Where a brakeman seeks to board a moving train, the speed of which he misjudges, and receives injury because some of the equipments of the car or engine are defective, recovery is denied.   (*Dowell* v. *R. R. Co.,* 18 Am. and Eng. R. R. Cas. 42 ; 28 id. 553 ; *Eckert* v. *R. R. Co.,* 43 N. Y. 502 ; *Roll* v. *R. R. Co.,* 15 Hun, 496, 502 ; 80 N. Y. 647 ; *Lockwood* v. *R. R. Co.,* 6 Am. and Eng. R. R. Cas. 151, 160, 161.)   Certain duties devolve upon the employer, and to whomsoever those duties are intrusted, he for the time represents him, and his neglect is that of the employer.   (*Crispin* v. *Babitt,* 81 N. Y. 516 ; *Neubauer* v. *R. R. Co.,* 101 id. 607.)   Beyond that point, and in the use of the means provided comes the

field of executive detail, in which liability does not attach to the employer for neglect. (*Rose* v. *R. R. Co.*, 58 N. Y. 217; *Slater* v. *Jewett*, 85 id. 61, 71, 72.) The immediate employer of the agent or servant, through whose negligence an injury occurs, is the one responsible for his negligence. (*Blake* v. *Feris*, 5 N. Y. 48; *Devlin* v. *Smith*, 89 id. 470, 476; 55 Am. Dec. 317.)

*John W. Lyon* for respondent. A railroad company owes to its employes the duty of providing and maintaining safe and suitable structures, cars, machinery and appliances, so as to protect them against danger and accidents. (*Bushby Case*, 107 N. Y. 374; *Lilly Case*, Id. 566; *Benzing* v. *Steinway*, 101 id. 547; *Stringham* v. *Stewart*, 100 id. 516; *Gottlieb* v. *Erie Co.*, 29 Hun, 637; 100 N. Y. 462; *Dekay* v. *Erie Co.*, 33 Hun, 665; 102 N. Y. 666; *Fuller* v. *Jewett*, 80 id. 46; *Ellis* v. *Erie Co.*, 95 id. 546; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549; *Lanning* v. *N. Y. C. R. R. Co.*, 79 id. 521; *Connelly* v. *Pollion*, 41 Barb. 366; 41 N. Y. 619; *Plank* v. *N. Y. C. R. R. Co.*, 60 id. 607; *Mehan* v. *S., B. & N. Y. R. R. Co.*, 73 id. 585; *Booth* v. *B. & A. R. R. Co.*, id. 138, 210; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 206; *Besel* v. *N. Y. C. & H. R. R. R. Co.*, 70 id. 163; *Malone* v. *Hathaway*, 64 id. 5; *Pantzar* v. *T. F. M. Co.*, 99 id. 368; *Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 id. 332; *Painton* v. *N. C. R. Co.*, 83 id. 7; *Ryan* v. *Fowler*, 24 id. 414; *Corcoran* v. *Holbrook*, 59 id. 520; *Kirkpatrick* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 240; *Kane* v. *Smith*, 80 id. 458; *Muldooney* v. *I. C. R. Co.*, 36 Iowa, 462; *Fay* v. *M. & S. L. R. Co.*, 15 N. W. Rep. 241; *King* v. *O. & I. R. Co.*, 14 Fed. Rep. 277; *G. T. R. Co.* v. *Cummings*, 27 Alb. Law Jour. 294; *Hough* v. *Railway Co.*, 100 U. S. [10 Otto], 213.) The deceased had the right to understand and assume that the defendant had exercised care and diligence in providing a safe and useful brake, in perfect working order for the hazardous service he was required to perform at this blind switch, so as not to expose him to unreasonable risks and danger. (*Connelly* v. *Pollion*,

41 Barb. 366, 369 ; 41 N. Y. 619 ; *Noyes* v. *Smith,* 28 Vt. 59 ; 24 N. Y. 414 ; *Jetter* v. *N. Y. & H. R. R. Co.,* 2 Abb. Ct. App. Dec. 458–461 ; *Ford* v. *F. R. R. Co.,* 110 Mass. 240 ; 14 Am. Rep. 605, 606 ; *Gibson* v. *P. R. R. Co.,* 2 id. 500 ; 46 Mo. 163 ; *F. W. & C. R. R. Co.* v. *Gildersleeve,* 33 Mich. 133 ; *T. & C. R. R. Co.* v. *Ingraham,* 77 Ill. 309.)    It is not necessary to rely here upon circumstances.    Affirmative proof of the most positive nature appears, and the conclusion of the jury that deceased was killed because of this defective brake, was proper and warranted, any other conclusion would have done violence to reason, as would any different conclusion by this court.    (*Jones* v. *N. Y. C. R. R. Co.,* 28 Hun, 364 ; 92 N. Y. 628 ; *Taylor Case,* 105 id. 203 ; *Searles Case,* 101 id. 661 ; *Cahill Case,* 106 id. 512 ; *Lilly Case,* 107 id. 566.)

PECKHAM, J.  We may assume that it was not only the duty of the defendant to furnish a proper car with safe appliances, in good repair, but that the defendant as master owed the further duty to the servant to provide a proper system and competent men for the inspection of cars after they were loaded and before they were to be used.    The evidence in this case shows that the defendant had complied with this duty.    It shows that it was the duty of the station-master at the station where the car was loaded, to either inspect the car himself or to have some of his men inspect it after it was loaded and before it was taken out.    The defendant having fulfilled its duty as a master, by providing a system and competent servants for the inspection of cars, and having imposed the duty of such inspection upon the station agents and his servants, cannot be held responsible for the negligence of such servants.    In carrying out such inspection the station agent was acting as an employe of defendant, and any neglect of his in regard to such inspection and by which an accident happened to any other servant, was the neglect of a co-employe, and not the neglect of the master.    The evidence shows that the car before it was loaded was in perfect condition, with a brake in good order and entirely adequate for the purpose for which it was

intended.   By the negligence of the person who loaded the·
car, the lumber was placed against the brake rod, and also·
against the wheel at the top of the brake, so that it thereby
became impossible to use the brake.   This is the contention
on the part of the plaintiff.   The fact was contested by the·
defendant upon whose part evidence was given that· the·
lumber was properly loaded and that the brake was in good
order and that the accident occurred on account of the negli-
gent manner in which the lumber car was " staked " out, while
the train was approaching at such a speed.   But for this pur-
pose we must assume that the car was improperly loaded, and the
brake rendered useless for that reason.   It must also be
assumed that if the station-master or his servant had done his.
duty and had inspected the car before it was " staked " out, the
improper loading would have been discovered and measures
taken which would have prevented the accident.

Nevertheless, we think the defendant had fulfilled its duty
to the servants in its employ when it furnished a perfectly
safe car and appliances, and when it also provided a system of
inspection of cars, and proper persons to inspect them after
they were loaded and before they were to be taken away.   The
failure to inspect, or, if inspection were made, the failure to
rectify the improper loading by which the brake was rendered
useless, was not the failure of the master to fulfill his duty to
his servant, but it was the negligence of a co-servant in carry-
ing out the orders of the master.   The master is not an insurer
that all his servants shall perform their duty, and he performs
his duty to the servant in this regard in providing a system of
inspection and intrusting its performance to competent hands.
If, thereafter, such servants are guilty of negligence, the master
is not responsible therefor to a co-servant.

We do not see that the question is in any way altered by the
fact that the car was loaded by the servants of the owner of
the lumber which was placed upon it.   Whoever loaded it, the
master had provided for an inspection of the car before it was
to be taken away, and if the inspection were neglected, it
was still the same neglect of a servant of the defendant to do

that which he ought to have done, and such neglect was not that of the master in fulfilling any of the duties which he owed as master to his servants. It cannot, we think, be properly contended that the master fails to provide a car which is a safe and proper one, or that he fails to provide one with proper appliances, because through the negligent manner in which the car is loaded the appliance is, on that account only, made useless for the purpose for which it was intended. The fact still remains that the car was in good condition, the brake in proper repair, fit for the use it was placed there for. It was rendered useless, not from any defect in the brake itself, but only from the fact that the person who loaded the car had improperly and negligently performed his duty.

It may be conceded that it was the duty of defendant to provide rules for inspecting the car after it was loaded, and proper men to carry out such rules, but when it did so it did all that it could be required to do. To carry out its rules necessitated the employment of servants, and a negligent loading of a car which was subsequently negligently inspected, or not inspected at all, could not alter the fact that the master had supplied originally a perfect car, and that the fault was not in the character of the car or in its appliances, but simply in the negligent loading of it.

A question has arisen, however, in this case, whether the point was sufficiently raised on the trial.

At the end of the plaintiff's evidence, and again when all the evidence was in, the defendant moved for a nonsuit on the ground, among others, that there was no evidence of negligence on the part of the master, the employer of the deceased. It is argued that the real contest in the case was over the question of fact whether the car had been improperly or negligently loaded, and that the defendant's evidence had in truth been confined to an attempt to prove that the lumber had not been placed against the brake, and that it was entirely free, and that the accident had occurred because of the improper manner in which the car had been "staked" out,

and pushed at too rapid a rate towards the train which was itself moving towards the car. There was, unquestionably, a sharp issue made on that point during the trial. But there was also evidence, already referred to, which showed that the master had in reality performed all the duty resting upon it for the proper protection of its servants.

We think the ground of the motion for a nonsuit above-mentioned sufficiently raised the question of the failure of proof of any negligence of the master. The almost universal practice in the trial of actions of this nature is to move for a nonsuit on the ground that no negligence of the defendant has been shown. It is rare, indeed, that the defendant goes into details for the purpose of showing why he claims that no negligence has been shown or in what particular respect the plaintiff has failed in his proof. The plaintiff always claims that upon all the facts in the case the question of whether there was or was not negligence is one for the jury to answer and not for the court. The motion for a nonsuit on the ground that no negligence has been shown, is predicated also upon all the evidence in the case, and it is assumed for the purpose of the motion that the evidence upon the part of the plaintiff is true, and the claim is then made that upon such assumption no negligence has been shown, or no question is in the case proper for a jury to pass upon. The counsel for the defendant, in orally arguing his motion, frequently enlarges upon it and presents the case as he regards it, in detail, and claims as to each separate piece of evidence, and as to all combined, that no question has been made for the jury. These arguments are never incorporated in the case, but any argument that can legitimately be adduced from the ground taken, and which is a fair inference from the evidence, has always, as we think, been regarded as sufficiently raised under the general motion on the ground of a failure to show any negligence. The inference of negligence may be raised in such various ways, and from so many different facts, that an attempt to specify each argument that might be urged as a ground for the motion might be somewhat dangerous in

its nature, on the theory that such a specification being made, no other argument, although it might clearly appear from the evidence, could be thereafter raised. It is the nature of such a motion, in such a case, that it should be broad; that it should assume all the evidence on the part of the plaintiff to be true, and that all fair inferences therefrom which would be favorable to the plaintiff should be indulged in, and still the claim is made that upon all such evidence and inferences, no negligence has been proved.

In this case the motion was on the ground that no negligence of the master was proved. What other way of raising this question could have been taken? How was it to be made more specific? The motion must have assumed the truth of the plaintiff's evidence, which, if believed, showed that the car had been negligently and improperly loaded. If the master were responsible for such negligence, then the defendant was responsible for the accident, unless it were contended that the accident did not happen from that cause, and if that were the contention the natural ground for the motion would have been, as it seems to us, that the negligence of the master did not cause the accident. This was evidently the view taken of the case by the counsel for the defendant, for he immediately proceeded to state that fact as a separate ground for his motion, for he said there was no evidence that it was in consequence of any defect in the brake that the decedent received the injury which caused his death. The statement that there was no negligence on the part of the master must, therefore, as it seems to us, have been plainly directed to the point that the master was not responsible for the negligent loading of the car by which the brake was rendered useless. If it did not mean that, we are at a loss to conceive what it did mean.

It is said, however, that when the motion to nonsuit was first made at the end of the plaintiff's evidence, there was no evidence in the case that the defendant had fulfilled its duty of providing for an inspection of the car previous to its being taken away, and that hence there was no basis for that ground of exemption; and, therefore, it must be presumed that the

motion was aimed at some other point, probably the one that the defendant was not responsible for the negligent loading of the car because it was loaded by the employes of the owner of the lumber and not by those of the defendant. But if that be true it is not an answer to the motion when it was subsequently renewed. It only shows that at the time when the motion was first made the defendant's counsel, while contending that the defendant was not responsible for the negligent loading of the car, could at that time only base his motion upon the untenable ground that it was not responsible because the car was not loaded by its employes, while after the evidence on the part of the defendant was given, by which it appeared that the defendant had fulfilled its duty to its employes by providing a system and competent men for the inspection of the car after it was loaded, a renewal of the motion on the same ground that there was no evidence of any negligence on its part could be supported by the additional facts proved on the part of the defendant. The ground was the same on each occasion, viz., that the defendant was not responsible for the negligent loading of the car, but when the motion was renewed at the end of all the evidence facts had, in the meantime been proved, which we think afforded good ground for granting it.

If there should be made any question on a retrial as to whether the company had, in fact, provided rules for an inspection of the cars and proper men to inspect them, after they were loaded and before they were taken away, such question would be proper to submit to the jury under correct instructions.

On the record, as it now stands, the plaintiff failed to show negligence on the part of the defendant in regard to the performance of its duties as master. The point discussed was sufficiently raised at the trial to be available here.

We think the judgment should be reversed and a new trial ordered, costs to abide event.

Earl, Finch and Gray, JJ., concur; Ruger, Ch. J., and Andrews and Danforth, JJ., dissent, the latter on the ground that when the car was furnished to the deceased it was as a

loaded, not an empty car, and at that moment the movement
of the brake was obstructed and, therefore, the car was imper-
fect and unfit for use, and for its unfitness defendant was
liable; also, that the question was not so raised by the excep-
tion as to be intelligible to the opposite party or the trial judge.

Judgment reversed.